## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

HATFIELD ENTERPRISES, INC.,
a West Virginia corporation,

                Plaintiff,

v.                              CIVIL  ACTION  NO.  3:11-0490

BAYER CROPSCIENCE LP,
a Delaware limited partnership,

                Defendant.

### MEMORANDUM OPINION AND ORDER

On July 2, 2012, the Court held a pretrial motions hearing in this matter.  For the reasons given at the hearing, and as set forth in this Memorandum Opinion, Defendant's Motion for Summary Judgment (ECF No. 12) is **GRANTED**.

### I.      Background

Plaintiff Hatfield Enterprises, Inc., is a West Virginia corporation.  Defendant Bayer CropScience, LP, is a Delaware Corporation.  This action for contract damages is properly before the Court based on diversity jurisdiction.  28 U.S.C. § 1332.

In 1983, Plaintiff entered into a contract ("Contract") with the predecessor in interest to Defendant Bayer CropScience, LP, Union Carbide.  The Contract provided that Plaintiff would construct, manage, and eventually close two ponds for the disposal of coal ash produced in Defendant's facilities.  The original Contract was signed in March 1983, and was amended several times through 1998, when the process of closing the ponds began.  *See* ECF No. 12, Exs. D-E.  In 1999, Plaintiff notified the West Virginia Department of Environmental Protection

("WVDEP") that the ponds were closed.  ECF No. 12, Ex. F.  As these ponds were constructed using dams, they were and are subject to the requirements of the West Virginia Dam Control and Safety Act, which include maintaining the relevant WVDEP permits for the dams.  W. Va. Code § 22-14-1- *et seq*.

Between 2004 and 2009, the WVDEP required additional work on the ponds and dams, as a condition of maintaining the dam permits.  It cost Plaintiff incurred more than $100,000 to comply with these WVDEP requirements.  ECF No. 12, Ex. 7.  Plaintiff now claims that the Contract requires Defendant to pay these expenses.

### A.  Contract

The Contract in this case is a written contract signed by Plaintiff and Defendant's predecessor in interest, Union Carbide, on March 10, 1983.  ECF No. 12, Ex. 1.  The Contract requires Defendant to make its ash product available for disposal by Plaintiff, and for Plaintiff to execute that disposal by means of deposit in Plaintiff's ash disposal ponds.  Contract, at 2-3.  The Contract provides that it shall continue "until all usable disposal area has been filled with Ash, covered with earth and seeded, and pipeline rights-of-way are transferred to [Defendant]."[1] Contract, Art. IV, at 3.  The Contract also requires the Plaintiff to "obtain and maintain in effect, at its own expense, until completion of the Work, all permits, licenses, certificates and government approvals or whatever nature relating to the performance of the Work . . ." *Id*., Art. XIV, at 5.

The body of the Contract establishes the basic contractual relationship between the parties.  The contract price, however, is set forth in Exhibit B to the original contract, which specifies the actions that Plaintiff must take in order to dispose of Defendant's ash, and the price

---

[1] The rights-of-way transfer was waived by Defendant in Amendment 7.

Defendant must pay Plaintiff for performing these activities.  *Id.*, Ex. B.   Exhibit B further provides:

> "the prices and fees set forth in this Exhibit "B" shall be adjusted as mutually agreed to by the Parties by increasing them by such amounts and for such period of time as may be necessary to reimburse contractor for additional costs which may be incurred by Contractor in connection with the Work to comply with the governmental laws, ordinances, and regulations which are not in effect on the date of execution of this Contract but which come into effect during the term of this Contract."
>
> *Id.*

Exhibit B was amended several times to reflect changes in work requirements and pricing during the life of the Contract.  Amendment 4 to the Contract (ECF No. 14, Ex. 2) was executed December 1988.  Amendment 4 changed, among other things, the method for calculating the monthly operating fee paid to Plaintiff, and reiterated the language in Exhibit B that "the prices and fees set forth in this Exhibit B a shall be adjusted as mutually agreed to by the parties . . ."

In 1998, the parties executed Amendment 7 to Exhibit B, which modified section "e" of Exhibit B, "pond closure," and specified the work to be done, and the price to be paid, for closing the Dutch Hollow ash pond.  ECF No. 12, Ex. 2.  Amendment 7 further provided that "the [listed payments for pond closure work] constitute full and final payment due [Plaintiff] for closure under the Contract or otherwise, unless the costs increase significantly in which case [Plaintiff] shall notify [Defendant] to discuss different payment terms."  Last, it noted that "except as expressly modified herein, the Contract as previously modified remains in full force and effect."  *Id.*

### B.  The Parties' Arguments

Plaintiff's Complaint asserts that Defendant is responsible for the claimed costs because the costs were incurred as part of the process of closing the ash ponds.  Plaintiff reasons that inspections and other work required by the WVDEP to maintain permits for closed ponds is part of the "pond closure" included in the Contract in Exhibit B, Amendment 7.  Plaintiff further asserts that Defendant has failed to discuss payment terms as required under Amendment 7 because costs have "increased significantly."  Plaintiff last claims that even if the Court finds no contractual obligation on Defendant's part, recovery in *quantum meruit* is appropriate.

Defendant moves for Summary Judgment, arguing that: 1) the Contract has terminated, so no obligation to Plaintiff remains; 2) even if the Contract has not terminated, it expressly assigned the cost of maintaining permits and complying with laws and regulation to the Plaintiff; and 3) no *quantum meruit* recovery is available.

## II.       Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ. P.* 56(a).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete

evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III.    Analysis

#### A.  Contract Damages

The Contract expressly provides that it terminates when "all usable disposal area has been filled with Ash, covered with earth and seeded, and pipeline rights-of-way are transferred to [Defendant]," events which took place more than a decade before this suit was brought.  *See* Contract, Art. IV; *see also* ECF No. 12, Ex. F.  Despite this explicit contractual provision, Plaintiff argues that Exhibit B and its Amendments 4 and 7 require Defendant to pay for the later-incurred cost of maintaining Plaintiff's dam permits.

Plaintiff argues that various phrases within Exhibit B and its amendments allow or require the parties to renegotiate payment if Plaintiff's costs increase over the course of Contract performance.  *See* Exhibit B ("the prices and fees set forth in this Exhibit B a shall be adjusted as mutually agreed to by the parties . . ."); Amend. 7 ("unless the costs increase significantly in which case [Plaintiff] shall notify [Defendant] to discuss different payment terms.").  Despite this language, however, neither Exhibit B nor its amendments obligate the Defendant to reimburse Plaintiff for all future changes to its business expenses.  Rather, these contract terms allowed Plaintiff and Defendant to increase the Contract price in the event of additional costs incurred *during the course of the specific work described in the Exhibit and Amendments*, not to

allow for price increases in the event of all possible costs associated with maintaining the closed ponds, *ad infinitum*. The modifying language in Exhibit B and its Amendments is limited in scope, and, importantly, does not purport to modify the general termination provision of the contract. That termination provision, Article IV, is unambiguous, and the Court will apply it. *See, e.g.*, Syl. Pt. 1, *Bennett v. Dove*, 277 S.E.2d 617 (1981) (Where a Contract is unambiguous, the Court should apply rather than construe it.). The Court therefore finds that the Contract terminated in 1999, when the requirements of Article IV were met, and therefore provides no basis for Plaintiff to recover from Defendant.

### B. **Quantum Meruit**

Plaintiff argues, in the alternative, that Defendant may be liable for Plaintiff's costs under a theory of *quantum meruit*, the implied contract principle that one party may not unjustly enrich itself at the expense of the other. *See Rubberlite, Inc. v. Baychar Holdings, LLC*, 737 F. Supp. 2d 575, 584 (S.D.W. Va. 2010) ("An implied contract arises from the principle of equity that one person may not enrich himself unjustly at the expense of another.") (quoting *Marshall v. Elmo Greer & Sons, Inc.*, 430 456 S.E.2d 554, 557 (W. Va. 1995)). Defendant argues that no quantum meruit recovery is permitted, because it is an implied contract principle, and here there was an express contract between the parties. *See id*. ("[a]n implied contract and an express one covering the identical subject-matter cannot exist at the same time. If the latter exists, the former is precluded.") (internal citations omitted).

Plaintiff responds that if the contract has terminated, as Defendant claims, then there is no express contract in effect between the parties, and a quantum meruit claim may proceed. Plaintiff frames the issue incorrectly: although implied contract damages may at times be sought as an alternative to express contract performance, implied damages may not be sought *in*

*addition* to contract performance.  Here, the Contract was executed, performed, and terminated. Although it has terminated, it was an express agreement covering the whole of the parties' obligations regarding the disposal of ash in the Dutch Hollow and Finney Branch ponds.  As such, additional implied contract obligations regarding that disposal cannot exist.  *See Case v. Shepherd*, 84 S.E.2d 140, 144 (W. Va. 1954) ("[a]n express contract and an implied contract, relating to the same subject matter, can not co-exist").  Plaintiff's claim for quantum meruit damages is, therefore, barred as a matter of law.

Having determined that Plaintiff's claims for express and implied contract damages cannot proceed, the Court **GRANTS** Defendant's Motion for Summary Judgment.  ECF No. 12. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        July 10, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE